**Robert J. POPKINS, Plaintiff,**

v.

**James B. ZAGEL, Director of Department of Law Enforcement of the State of Illinois; Joseph E. Ginter, Deputy Director of Department of Law Enforcement of the State of Illinois; and the Department of Law Enforcement of the State of Illinois, Defendants.**

Civ. A. No. 83–3190.

United States District Court,
C.D. Illinois,
Springfield Division.

June 19, 1985.

Karl Yost, Morrison, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen. of the State of Ill. by Thomas M. Schmidt, Asst. Atty. Gen., and Robert Ogren, Dept. of Law Enforcement, Springfield, Ill., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Chief Judge, Sitting by Designation.

■ In this action under the United States Constitution and various federal statutes, the plaintiff charges that his statutory termination at age 60 from his position as an Illinois State Trooper constitutes illegal age discrimination and violates his right to equal protection. A bench trial before the Honorable J. Waldo Ackermann was held on September 26, 1984. Judge Ackerman passed away prior to filing findings of fact and conclusions of law, and consequently, the parties are entitled to a new trial pursuant to Fed.R.Civ.P. 63. *Arrow-Hart, Inc. v. Philip Carey Co.*, 552 F.2d 711 (6th Cir.1977). The parties have agreed, however, to submit the entire transcript of proceedings held on September 26, 1984, to this Court for the issuance of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. By the same written stipulation, the parties have waived oral argument.

### FINDINGS OF FACT

1. Robert J. Popkins was born June 24, 1923. He was hired by the Illinois Department of Law Enforcement, Division of State Police, on December 15, 1957, and served as a trooper until he was forced to retire on June 24, 1983, his sixtieth birthday.

2. The Illinois Department of Law Enforcement, Division of State Police, forced Popkins to retire pursuant to Ill.Rev.Stat. 1983, ch. 121, § 307.12–1, which provides: "No person may be retained in service as a state policeman after he has reached 60 year of age."

3. Illinois State Troopers are responsible for the patrol of highways, regulation, and enforcement of vehicle and criminal laws, accident and criminal investigations, arrests, searches, and the provision of first aid to ill/injured persons. A trooper must perform these duties in all types of weather conditions, and the working conditions include responding to hazardous situations, accident scenes, and service calls, some of which require physical effort in lifting and handling heavy materials, and in subduing or pursuing individuals who resist arrest.

4. At the time of his retirement, Popkins held the position of Public Information Officer for District Number 1. A Public Information Officer is required to be a state trooper and wear the uniform, including a weapon, but does not work as a highway patrol officer. A Public Information Officer releases news items and makes public appearances before school and civic groups.

5. Public Information Officers are required to carry out the responsibilities of the Department of Law Enforcement, including enforcement of traffic laws and responding to accidents as they travel throughout their district, and they must make themselves immediately available to the District Commander in emergency or disaster situations. The Department retains discretion to transfer Public Information Officers into any other position.

6. Popkins served as Public Information Officer for over six years, and was never called upon to respond to an emergency or disaster situation.

7. Prior to his forced retirement, Popkins was required to take, and passed, a physical examination on June 22, 1983. The test was administered by the Department of Law Enforcement and included various physical tests such as touching one's toes, picking up a person off the floor, and walking or running a mile and a half. A medical examination is not required.

8. The purpose of the Illinois statute requiring state police to retire at age 60 is to protect the public by assuring the physical preparedness of its uniformed police.

9. An individual's physical ability declines with age. One measure of an individual's physical ability is their aerobic capacity, which measures the amount of oxygen a body can absorb. Based upon the most strenuous aspects of a state trooper's job, a trooper should have an aerobic capacity of 3.0 liters of oxygen per minute. Aerobic capacity decreases with age, and the average 60 year old has an aerobic capacity of 2.1 or 2.2 liters per minute. Regular, vigorous exercise can only inprove aerobic capacity by 10 to 15%.

10. Coronary artery occlusion, which restricts the flow of blood to the heart, could cause an individual exposed to high levels of physical exertion to suffer a heart attack. By age 60, approximately 70% of men have significant coronary artery disease in the form of obstruction of at least one coronary artery to a degree of at least 50%. There is no practicable means to detect the presence of coronary artery occlusion in asymptomatic individuals. At age 55 and over, age is the most significant factor in predicting the presence or absence of coronary artery occlusion.

11. Robert J. Popkins filed this lawsuit on June 16, 1983. He notified the Secretary of Labor of his intent to file suit by filing a complaint with the Equal Employment Opportunity Commission on May 20, 1983.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331. The plaintiff has requested relief under the Discrimination in Employment Act, 29 U.S.C. § 626; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202; the Age Discrimination in Federally Assisted Programs Act, 42 U.S.C. § 6104; the civil rights statutes, 42 U.S.C. § 1981 and § 1983; and unspecified provisions of state law.

■ 2. The plaintiff has not stated a claim under 42 U.S.C. § 1981 because he has not alleged any discriminatory treatment on account of his race.

■ 3. The plaintiff's claim under the Age Discrimination in Federally Assisted Programs Act is not properly before the Court. Under 42 U.S.C. § 6104(e), a party is required to notify the Secretary of Health and Human Services, the Attorney General of the United States, and the defendants thirty days prior to commencement of the action. A litigant is required to exhaust administrative remedies under 42 U.S.C. § 6104(f). Because the plaintiff has not demonstrated compliance with these provisions, the Court lacks jurisdiction over this claim.

■ 4. The plaintiff's unspecified state law claims are barred by the Eleventh Amendment, because a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state, and the relief sought would have a direct impact on the state itself. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ 5. The plaintiff's requests for a declaratory judgment and § 1983 relief are premised, in part, on an alleged violation of the equal protection clause of the Fourteenth Amendment. Under the equal protection clause, a mandatory retirement law for state police must be sustained if the state has a rational basis for the law, even though other state employees are not required to retire until age 70. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The Illinois statute requiring state police to retire at age 60 (Ill.Rev.Stat.1983, ch. 121, § 307.12–1) meets the requirements of the equal protection clause, as it rationally furthers the purpose of protecting the public by assuring the physical preparedness of the state's uniformed police. *Murgia*, supra.

■ 6. A claimant under the Age Discrimination in Employment Act ("ADEA") may not commence a lawsuit until 60 days after a charge has been filed with the Secretary of Labor through the Equal Employment Opportunity Commission. 29

U.S.C. § 626(d). Every appellate court that has considered this question has concluded that the 60-day notice provision is a jurisdictional prerequisite. *Cannon v. University of Chicago*, 559 F.2d 1063 (7th Cir. 1976), rev'd in part and remanded on other grounds, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 489 (4th Cir.1983). The purpose of the 60-day waiting period is to permit the appropriate federal officials an opportunity to bring about compliance with the act by informal methods. Because the defendants in this action acted pursuant to state statute, efforts at conciliation would be meaningless. The law does not require the performance of meaningless acts, and consequently, the Court has jurisdiction over the ADEA claim even though the plaintiff provided only 27 days' notice before commencing this lawsuit.

■ 7. Even though the plaintiff was discharged solely because of his age, the discharge did not violate the ADEA because under the facts presented, age is a bona fide occupational qualification ("BFOQ") reasonably necessary to the operation of the state patrol. To prevail on a BFOQ defense, "an employer must show that the challenged age qualification is reasonably related to the essential operation of its business, and must demonstrate either that there is a factual basis for believing that all or substantially all persons above the age limit would be unable to effectively perform the duties of the job, or that it is impossible or impracticable to determine job fitness on an individualized basis." *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). The first step in this inquiry is satisfied for the same reasons that the Court sustained the statute under the equal protection clause. *Supra.* The defendants have sustained their burden under the second step in the inquiry by presenting undisputed medical testimony that substantially all persons over age 60 lack the physical capacity to effectively work as Illinois State Troopers, and the impracticability of determining which persons over age 60 are capable of performing this work. The

plaintiff's particular assignment at the time of his termination is not relevant to this inquiry, because the BFOQ focus is on the "business" and not on the assignment. *Equal Employment Opportunity Commission v. City of Janesville*, 630 F.2d 1254, 1258 (7th Cir.1980). This point is especially important in this case, because a trooper is not permanently assigned as Public Information Officer, and may be reassigned to patrol duties at any time. So long as the Department of Law Enforcement requires its information officers to be state troopers, individuals holding that position must meet all the standards required of troopers. The plaintiff has presented no evidence that suggests that retirement at age 60 is not a BFOQ for the generic class of state troopers, and the plaintiff's nonmedical physical examination does not establish his fitness to perform as a state trooper.

### ORDER

IT IS THEREFORE ORDERED that this action is DISMISSED.