**Lynn L. RANNELS**

v.

**Sarah W. HARGROVE.**

**Civ. A. No. 89–6155.**

United States District Court, E.D. Pennsylvania.

Feb. 20, 1990.

**1216**

Lynn L. Rannels, Reinholds, Pa., pro se.

Ernest D. Preate, Jr., Atty. Gen., and Claudia M. Tesoro, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

Lynn L. Rannels, a citizen of Pennsylvania, has filed a *pro se* complaint against Sarah W. Hargrove, the Pennsylvania Secretary of Banking, alleging that the "Club 50" program of Meridian Bancorp (hereinafter "Meridian") violates Pennsylvania Code § 38.1; the Age Discrimination Act, 42 U.S.C. §§ 6101 *et seq.* (hereinafter "ADA"); and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. It allegedly does so because it gives certificate of deposit purchasers who are over the age of fifty an extra one-quarter of one percent interest on their certificates; Rannels, who has purchased a certificate of deposit, was denied this bonus.[1] Rannels further alleges that Hargrove, by failing to bar and, indeed, by encouraging the illegal practices of Meridian, has visited harm upon him.

Rannels therefore asks for an injunction compelling Hargrove to exercise her supervisory powers under Commonwealth law to compel Meridian to conform its practices to the standards required by the statutes and regulations above. He also asks for general equitable and legal relief. Hargrove has responded with a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); along with his reply, Rannels has moved for a preliminary injunction. I shall grant Hargrove's motion; since the action shall be dismissed, the motion for a preliminary injunction is necessarily denied. In this procedural posture, however, I must give Rannels leave to amend his complaint, consistent with the law of the case as developed here.

Under Fed.R.Civ.P. 12(b)(6), "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Similar standards apply under Rule 12(b)(1). Dismissal under this Rule "should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). In deciding a motion to dismiss under 12(b)(1) filed before an answer is submitted—that is, a facial challenge to jurisdiction—all allegations contained in the complaint must be regarded as true. *Cardio–Medical Assocs. v. Crozer–Chester Med. Center*, 721 F.2d 68, 75 (3d Cir.1983). Because Rannels is a *pro se* litigant, I must be especially careful to read these pleadings generously.

---

1. Although Rannels did not allege that he was under the age of fifty, the generous reading of *pro se* pleadings required by precedent allows me to conclude that he is and hence that there are no standing problems here.

*Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

Accordingly, I shall assume that Rannels seeks to proceed under 42 U.S.C. § 1983 for both of his federal claims, as well as under the ADA itself. This belief is consistent with the assumption made by the Commonwealth's attorney and with the assertion made by Rannels in his "Request to Deny Defendant's Motion to Dismiss." I assume as well that he seeks to have this court enjoin Hargrove from violating both the Commonwealth and federal statutes and regulations, and that he seeks both legal and equitable relief.

## I. STATE LAW CLAIMS

■ Hargrove has moved to dismiss all state law claims under Rule 12(b)(1) because this court lacks jurisdiction. I agree. As Hargrove points out, federal courts may not order state officials to conform their conduct to the strictures of state law. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*). By doing so, this court would intrude greatly upon the sovereignty protected by the Eleventh Amendment.[2] *Pennhurst II,* 465 U.S. at 106, 104 S.Ct. at 911; *Jones v. Connell,* 833 F.2d 503, 505 (3d Cir.1987). To the extent that Rannels seeks damages for Hargrove's purported violation of Pennsylvania law, this court still lacks jurisdiction. Where a suit attempts to recover money, the state is the real party in interest and thus may invoke its sovereign immunity, even though individual officials may be the nominal defendants. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Lewis v. Kelchner,* 658 F.Supp. 358, 361 (M.D.Pa.1986). Immunity thus attaches here as well, and so I am without jurisdiction to hear this claim.

■ Pennsylvania could have chosen to waive its sovereign immunity to suit by a statute specifically authorizing suit in *federal* court. *Welch v. State Dep't of Highways,* 483 U.S. 468, 473–74, 107 S.Ct. 2941, 2945–46, 97 L.Ed.2d 389 (1987); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Skehan v. State Sys. of Higher Educ.,* 815 F.2d 244, 247 (3d Cir.1987). However, the right-to-sue statute, 42 Pa. Cons.Stat.Ann. § 8521(b) (Purdon 1982), states that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." This effectively bars the relief requested by Rannels. *See Laskaris v. Thornburgh,* 661 F.2d 23, 24 (3d Cir. 1981). Rannels may, insofar as the statutes of Pennsylvania permit him to, pursue these claims in Commonwealth courts. I am without jurisdiction to hear them here, though, and so I must grant Hargrove's motion to dismiss these under Fed.R.Civ.P. 12(b)(1).[3]

**2.** The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state ..." On its face, it only covers suits in diversity. However, its scope was expanded to cover suits against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). While the *Hans* doctrine has been subjected to increasingly severe judicial and scholarly attack, it remains intact and thus governs me here. *See, e.g., Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 247–304, 105 S.Ct. 3142, 3149–79, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting) (historical attack on *Hans* ); Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity,* 98 Yale L.J. 1 (1988) (same); *see also Pennsylvania v.*

*Union Gas Co.,* —— U.S. ——, 109 S.Ct. 2273, 2286–89 & 2286 n. 1, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) (criticizing *Hans;* collects articles attacking).

**3.** In passing, I should note that the state law claims seem infirm on Rule 12(b)(6) grounds as well. The regulation Rannels cites, 10 Pa.Code § 38.1 (1989), merely defines the term "higher rate savings accounts." It creates no private rights. Moreover, the section applies only to savings associations; since Rannels failed to plead that Meridian, from which he purchased his certificate of deposit, is a savings association as defined in the Savings Association Code of 1967, 7 Pa.Stat.Ann. § 6020–1 *et seq.* (Purdon Supp.1989), the regulation may not even apply to him, thus depriving him of standing to sue

## II. FEDERAL LAW CLAIMS

Generously reading the complaint, Rannels seeks his relief under the ADA itself and under 42 U.S.C. § 1983 as the vehicle for claims under the ADA and the Equal Protection Clause of the Fourteenth Amendment. These shall be addressed in turn.

### A. The ADA

Under the ADA, "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. For a suit brought under the ADA to withstand dismissal, it must leap several statutory and constitutional hurdles. First, does this statute abrogate Pennsylvania's sovereign immunity? Second, is there a private right of action under the ADA? Third, does the ADA permit suits for, in essence, reverse age discrimination? Fourth, has Rannels met the legal requirements for filing an action under the ADA? Fifth, is the program from which he alleges his exclusion within the scope of the statute? These questions are addressed below.

As a threshold issue, though, Hargrove claims that the ruling in *Rannels v. Meridian Bancorp, Inc.*, 718 F.Supp. 10 (E.D. Pa.), *aff'd mem.*, 893 F.2d 1331 (3d Cir. 1989), controls here, precluding suit on the federal claims. In that action, Rannels sued the bank from which he purchased his certificate of deposit under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, claiming essentially the same age-based discrimination he complains of here. Judge Van Antwerpen, in granting summary judgment for the defendant, held that the defendant was not a state actor and consequently was not subject to suit under the Equal Protection Clause. 718 F.Supp. at 12–13. In the alternative, Judge Van Antwerpen held that, even if Meridian Bancorp were a state ac-

tor, the Club 50 program would not violate the Constitution. 718 F.Supp. at 13–14.

■ Hargrove's arguments are not well taken. First, the holding that the Club 50 plan is constitutional does not mean that it violates no statutes. It means only that the Equal Protection Clause is not infringed upon by the plan. Consequently, Rannels would still be free to pursue his ADA claims. Second, because the constitutional holding in *Rannels v. Meridian Bancorp* was in the alternative, it does not satisfy the requirements for issue preclusion. The Restatement (Second) of Judgments § 27 comment i (1982) sets forth the general principle that holdings in the alternative by a trial court ought not be used for issue preclusion, a principle applied to subsequent actions between a party to the prior action and a non-party by section 29. *See, e.g., Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168–73 (5th Cir. Unit A Dec.1981). This is so because the findings may not be equally well considered, and because they may not all have been appealed with equal vigor (or, indeed, at all). The Restaters acknowledge that holdings in the alternative may be fully litigated and decided at trial, but they prefer the absolute rule "in the interest of predictability and simplicity." Restatement (Second) of Judgments § 27 comment i (1982). Here, I believe that Judge Van Antwerpen's alternative holding is astute and accurate. I shall, however, bow to the will of the Restaters, especially because Rannels is a *pro se* litigant and hence might not have prosecuted his arguments in the earlier litigation with all of the skill that an attorney could supply. I thus shall not treat the *Rannels v. Meridian Bancorp* holding as preclusive.

#### 1. *Sovereign Immunity*

■ Congress may, if it chooses, abrogate Eleventh Amendment immunity by statute, at least if the statute is enacted pursuant to section 5 of the Fourteenth Amendment. *Atascadero*, 473 U.S. at 238, 105 S.Ct. at 3145; *Fitzpatrick v. Bitzer*,

under it. *See Rannels v. Meridian Bancorp, Inc.*, 718 F.Supp. 10 (E.D.Pa.), *aff'd mem.*, 893 F.2d 1331 (3d Cir.1989) (related matter; Meridian

regulated by FDIC, thus not a savings association).

427 U.S. 445, 451–52, 456, 96 S.Ct. 2666, 2669–70, 2671, 49 L.Ed.2d 614 (1976). It must, however, do so in "unmistakably clear language." *Welch,* 483 U.S. at 478, 107 S.Ct. at 2948. Following these principles, the Court held in *Atascadero* that section 504 of the Rehabilitation Act, 29 U.S.C. § 794, did not limit state sovereign immunity.[4]

■ Goaded by *Atascadero,* Congress enacted the Rehabilitation Act Amendments of 1986, Pub.L. 99–506, 100 Stat. 1807 (codified in scattered sections of 20, 29 & 42 U.S.C.), section 1003 of which states that:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 794 of Title 29, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C.A. § 2000d–7; *see also* 132 Cong. Rec. S15,101 (daily ed. Oct. 3, 1986) (statement of Sen. Weicker; Rehabilitation Act Amendments intended to abrogate immunity); 132 Cong.Rec. S15,104–06 (daily ed. Oct. 3, 1986) (statement of Sen. Cranston; same). This language is amply clear, and voids any sovereign immunity defense Hargrove might seek to interpose. *See, e.g., United States v. Yonkers Bd. of Educ.,* 893 F.2d 498, 503 (2d Cir.1990) (Title VI; immunity abrogated); *Brennan v. Stewart,* 834 F.2d 1248, 1260 n. 22 (5th Cir.1988) (Rehabilitation Act; immunity abrogated); *Sharif v. New York State Educ. Dep't,* 709 F.Supp. 345, 358 (S.D.N.Y.1989) (Title IX; immunity abrogated).

**2. *Private Right of Action***

■ Hargrove somewhat tentatively questions whether the ADA has created a private cause of action, pointing to the conflict between *Mittelstaedt v. Board of Trustees,* 487 F.Supp. 960, 965 (E.D.Ark. 1980) (no private cause of action) and *NAACP v. Wilmington Med. Center, Inc.,* 491 F.Supp. 290, 293 n. 12 (D.Del.1980) (assumes, without deciding, that private cause of action exists), *aff'd,* 657 F.2d 1322 (3d Cir.1981) (en banc).[5] It is necessary to find that Congress intended to create an enforceable right, rather than a nugatory expression of policy. *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 18–27, 101 S.Ct. 1531, 1540–45, 67 L.Ed.2d 694 (1981) ("*Pennhurst I*"). I find that, *Mittelstaedt*'s bare, unsupported assertion aside, all available evidence supports the existence of a private cause of action under the ADA.

The statute itself provides in its enforcement section that "any interested person" may bring an action to enjoin a violation of the ADA. 42 U.S.C. § 6104(e)(1). Moreover, the general regulations provide for procedural steps to be exhausted before a complainant may bring suit against a recipient of funds. 45 C.F.R. § 90.50(a) (1988). These provisions would be unnecessary were there no private cause of action. *See Stephanidis v. Yale Univ.,* 652 F.Supp. 110, 112 n.* (D.Conn.1986) (presence of private cause of action supported by regulations), *aff'd mem.,* 814 F.2d 654 (2d Cir. 1987). The legislative history of § 6104(e)(1) also impels this conclusion. H.R.Rep. No. 1150, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.Code Cong. & Admin.News 3388, 3410 ("The Age Discrimination Act is also amended to permit persons harmed by violations of the Act to pursue a private civil suit for relief …").

---

**4.** This is significant here because section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* Title IX of the Education Amendments of 1972, § 901(a), 20 U.S.C. § 1681(a), and section 6102 of the ADA are almost identically phrased, and are treated analogously in Congress and court. *See, e.g.,* S.Rep. No. 64, 100th Cong., 1st Sess. 4, *reprinted in* 1988 U.S.Code Cong. & Admin. News 1, 6 (Civil Rights Restoration Act; terms

of Act apply to all four); *Action Alliance v. Heckler,* 789 F.2d 931, 934 n. 1 (D.C.Cir.1986) (ADA modeled on Title VI).

**5.** It is open to question whether the Court of Appeals, which did not address this issue in its affirmance, actually held that a private cause of action under the ADA exists.

Finally, all courts since *Mittelstaedt* that have faced the issue have resolved it in favor of a private cause of action. *See, e.g., Suber v. Bulloch County Bd. of Educ.*, 722 F.Supp. 736, 742 (S.D.Ga.1989); *Stephanidis*, 652 F.Supp. at 112 n.*; *Popkins v. Zagel*, 611 F.Supp. 809 (C.D.Ill. 1985); *Wilmington Med. Center*, 491 F.Supp. at 293 n. 12. *Cf. Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (private cause of action exists under Title IX). The authority is formidable and unchallenged. Consequently, I hold that the ADA provides a private cause of action.

### 3. *Reverse Age Discrimination*

■ Hargrove maintains that the ADA does not apply to the situation at issue here. This may be read in part as an argument that an age-based distinction of the sort complained of here—one that benefits the older rather than the younger—is not within the scope of the statute. Rannels, in essence, has put forth a charge of reverse age discrimination, in that we commonly think of age-based discrimination as injuring older citizens. Whether such claims are cognizable under the ADA appears to be a question of first impression. My examination of the statute and the legislative history leads me to conclude that these claims are.

"As is true in every case involving the construction of a statute, our starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Here the language is unqualified: "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. Had Congress wanted to protect only the elderly, it could have done so with only minor changes in wording. The ADA nowhere contains any limitations or exclu-

sions directed toward any age-based group. This strongly suggests that the ADA covers all Americans.

The legislative history also supports an expansive interpretation of the ADA. The reports that accompanied the bill speak in broad terms of discrimination on the basis of age. H.R.Conf.Rep. No. 670, 94th Cong., 2d Sess. 52, 54, *reprinted in* 1975 U.S.Code Cong. & Admin.News, 1252, 1290, 1319, 1321. It is especially interesting that, in its discussion of the exclusion of benefit programs from coverage, the report states that the statute excludes "programs for which the law describes intended beneficiaries or target groups in age-related terms without reference to specific chronological age, as in the use of such terms as 'older Americans,' or 'elderly,' or 'children.'" H.R.Conf.Rep. at 58, 1975 U.S. Code Cong. & Admin.News at 1325.

The executive branch, asked to express its views on the bill, also read it broadly. In a letter to Senator Williams, chairman of the Committee on Labor and Public Welfare, then-Secretary of Health, Education, and Welfare Weinberger included decisions by school districts to exclude three-year-olds from kindergarten classes or eleven-year-olds from high school classes as potentially within the compass of the ADA. This letter was made part of the record in the Senate debate on the bill.[6] Letter from Caspar W. Weinberger to Harrison A. Williams, Jr. (June 18, 1975) (*reprinted in* 121 Cong.Rec. 21,171–72 (June 26, 1975)).

Finally, many of those who spoke in Congress in support of the ADA either specifically stated that it covered those of all ages or stated more generally that it prohibited age discrimination. Significantly among the former was the House manager and primary sponsor of the Older Americans Amendments of 1975. 121 Cong.Rec. 9,212 (Apr. 8, 1975) (statement of Rep. Brademas) ("[I]t is the intent of the committee that [the ADA] apply to age discrimination at all age levels, from the youngest to the oldest."); *see also* 121 Cong.Rec. 37,299

---

6. The Senate form of the Older Americans Amendments of 1975 did not contain the ADA. The House form did. In the conference committee, the House form was substantially adopted.

(Nov. 19, 1975) (statement of Rep. Quie). The more general, expansive phrasing was frequent.[7]

There is little to be said in opposition. The ADA was enacted as part of an omnibus bill, the Older Americans Amendments of 1975, Pub.L. 94–135, 89 Stat. 713 (codified in scattered sections of 20, 29 & 42 U.S.C.), intended primarily to benefit the elderly. Therefore, one could view the ADA as part of a market basket of aids to the elderly, and conclude that the legislative purpose was to prevent discrimination against them.[8]

This information, however, does not control the ambit of the statute. The speakers above did not state that the scope of the ADA was *limited* to discrimination against the elderly; rather, they merely emphasized that it would cover such discrimination. An intent to assist the elderly is not inconsistent with an intent to assist others. The ADA's aegis is also not determinative, as omnibus bills inevitably carry many different passengers. Though Congress, or at least some members, may have been impelled to act by perceived discrimination against the elderly, it never evinced a desire to limit the ADA to remedying that problem.

The legislative history, on balance, supports the broad anti-discrimination language explicit in the statute. While clear, unequivocal statements of congressional intent to limit the range of the ADA might persuade me to do so, no such statements are present here. I thus hold that the ADA covers discrimination on the basis of age, whether against the old or the young, and hence encompasses Rannels' claim.

### 4. *Statutory Prerequisites*

■ Hargrove argues that Rannels failed to meet the requirements imposed by the ADA and the regulations authorized by it as prerequisites to filing a complaint, and hence that this court lacks jurisdiction over the ADA claims of the complaint. I agree.

The courts that have addressed the point have held that dismissal is the correct response to the failure to exhaust the administrative remedies provided by the ADA. *Suber,* 722 F.Supp. at 742; *Popkins,* 611 F.Supp. at 812. The requirements are laid out at 42 U.S.C. § 6104 and 45 C.F.R. § 90. In sum, administrative remedies are exhausted if 180 days have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or if, whatever the interval, the agency has found in favor of the complainant. 42 U.S.C. § 6104(f); 45 C.F.R. § 90.50(a). Moreover, before filing the action in federal court, the complainant must give thirty days' notice by registered mail to the Secretary of Health and Human Services, the Attorney General, the head of the granting agency, and the grant recipient. 42 U.S.C. § 6104(e)(1); 45 C.F.R. § 90.50(b)(3)(iii). This notice must state the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded if the plaintiff prevails. 42 U.S.C. § 6104(e)(2); 45 C.F.R. § 90.50(b)(3)(iv).

Rannels has not pleaded that any of these steps have been pursued. I shall therefore dismiss his ADA claims.[9]

### 5. *The ADA's Scope*

■ Finally, Hargrove maintains that the ADA does not cover her department

---

7. *See, e.g.,* 121 Cong.Rec. 37,740 (Nov. 20, 1975) (statement of Sen. Schweiker); 121 Cong.Rec. 37,300 (Nov. 19, 1975) (statement of Rep. Gilman); 121 Cong.Rec. 9,217 (Apr. 8, 1975) (statement of Rep. Randall); 121 Cong.Rec. 9,216 (Apr. 8, 1975) (statement of Rep. Madden).

8. Indeed, some of the supporters of the ADA commented that they expected it to improve the lot of older people. *See, e.g.,* 121 Cong.Rec. 37,744 (Nov. 20, 1975) (statement of Sen. Tunney) (ADA "will mean greater access to existing programs by the elderly"); 121 Cong.Rec. 9,237 (Apr. 8, 1975) (statement of Rep. Lloyd) (ADA "is a crucial measure in terms of employment for the elderly"); 121 Cong.Rec. 9,235 (Apr. 8, 1975) (statement of Rep. Clausen) (ADA will help eliminate discrimination against elderly); 121 Cong.Rec. 9,228 (Apr. 8, 1975) (statement of Rep. Wolff) (hopes that ADA will reduce employment discrimination against elderly).

9. The claims will be dismissed subject to his right to amend his complaint, which will be discussed below.

and thus that she cannot be sued under it. To the extent that this argument is directed toward a deficient pleading, I agree.

The ADA covers "any program or activity receiving Federal assistance." 42 U.S.C. § 6102. "Program or activity" is defined as "all of the operations of . . . a department, agency, . . . or other instrumentality of a State . . . or the entity of such State . . . that distributes such assistance and each such department or agency . . . to which the assistance is extended . . ." 42 U.S.C.A. § 6107(4) (West Supp.1989). Thus, the Department of Banking itself—not the Commonwealth as a whole—would have to receive federal assistance for the ADA to apply to it. *See also Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 636, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984) (§ 504 of Rehabilitation Act; language "limits the ban on discrimination to the specific program that receives federal funds"); *United States v. Alabama*, 828 F.2d 1532, 1548–50 & nn. 75–76 (11th Cir. 1987) (same; collecting cases); S.Rep. No. 64, 100th Cong., 1st Sess. 4, *reprinted in* 1988 U.S.Code Cong. & Admin.News 1, 6 ("For State and local governments, only the department or agency which receives the aid is covered.").

Turning to Rannels' complaint, I find no allegations whatever that Hargrove, the Department of Banking, or even the Commonwealth of Pennsylvania receive financial assistance from the federal government. Even if Rannels' answer is read as a sort of annex to the complaint, no such allegations appear. The most I can tease out is that Hargrove acts pursuant to federal banking statutes, which presumably confer some benefits upon the entities that are regulated, and hence that Hargrove is a recipient of federal assistance. Plaintiff's Request to Deny Defendant's Motion to Dismiss, ¶ 5. This argument is unavailing.

The question it poses—whether, for these purposes, regulation amounts to conferring assistance—has not been answered under the ADA. However, the same question has been asked and answered for the ADA's sister statutes (those that attach strings to the receipt of federal funds, using the same language as the ADA in doing so).[10] The leading case is *Department of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986), which construed the Rehabilitation Act. There, the Court explained that a statute of this sort, which imposes a condition upon the receipt of federal funds, is "a form of contractual cost of the recipient's agreement to accept the federal funds." 477 U.S. at 605, 106 S.Ct. at 2711. Because the requirement is couched as a type of contractual obligation, it attaches only to "those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." 477 U.S. at 606, 106 S.Ct. at 2711. Thus, the Court has interpreted the term "financial assistance" to include only the actual receipt of funds. It is not enough for a putative defendant to benefit from the expenditure of governmental funds, as might a regulated industry; as the Court put it in *Paralyzed Veterans*, "[t]he statute covers those who receive the aid, but does not extend as far as those who benefit from it." 477 U.S. at 607, 106 S.Ct. at 2712.

To illustrate, the Court in *Paralyzed Veterans* refused to extend the Rehabilitation Act to cover airlines merely because the federal air traffic control system benefits them. The Court found that the system had many beneficiaries, but no actual recipients; like many federal programs, it provides general economic benefits. 477 U.S. at 611–12, 106 S.Ct. at 2714. Likewise, broadcast licensees, though they derive benefits from their FCC-granted licenses, are not recipients of federal financial assistance for the purposes of the Rehabilitation Act. *California Ass'n of the Physically Handicapped v. FCC*, 840 F.2d 88, 92–93 & n. 8 (D.C.Cir.1988). The same logic applies here. Whatever benefits may inhere from, for example, the Federal Reserve Act or the Federal Deposit Insurance Act go to all. Though the existence of these regulatory agencies may yield a fi-

---

**10.** *See* note 4 *supra*.

nancial benefit to the Commonwealth, and hence to Hargrove and her agency, this benefit is non-contractual and indirect. The Department of Banking is thus not within the scope of the ADA. This court therefore lacks subject matter jurisdiction over such claims.[11]

## B. § 1983

Reading Rannels' complaint and reply to the pending motion liberally, I infer that he wishes to make claims under 42 U.S.C. § 1983 for violations of the rights created by the ADA and the Equal Protection Clause.[12] Before I can reach these claims, however, I must consider the extent to which sovereign immunity shields Hargrove from suit.

Though *Hans* extends the Eleventh Amendment to suits brought by a citizen of a state against that state, and thus would apparently block this suit, the legal fiction promulgated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), avoids this result. In *Young,* the Court held that suits against a state employee for the employee's violation of federal law could be entertained by the federal courts, because officials acting illegally proceed outside the bounds of their official duties and hence are not cloaked with immunity.

 However, Rannels is not home free because he sued Hargrove rather than the Commonwealth of Pennsylvania. The Court has carefully protected states from indirect raids upon the public fisc via § 1983 actions. Section 1983, the Court has held, does not abrogate the sovereign immunity of the state. *Edelman v. Jordan,* 415 U.S. 651, 675–77, 94 S.Ct. 1347, 1361–63, 39 L.Ed.2d 662 (1974); *see also Quern v. Jordan,* 440 U.S. 332, 341–45, 99 S.Ct. 1139, 1145–47, 59 L.Ed.2d 358 (1979) (reaffirming *Edelman* ). This has two important consequences for Rannels. First, his claims for monetary relief are barred by the Eleventh Amendment; though they proceed against officials, rather than against the Commonwealth, claims for monetary relief strike against the public purse and hence are in essence claims against the Commonwealth. *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3104–05; *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143; *see also Will v. Michigan Dep't of State Police,* —— U.S. ——, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989) (states are not "persons" for the purposes of § 1983, so no monetary relief). Second, his demands for retroactive injunctive relief must also fall, as any remedy for damage already done must involve public expenditure. *Edelman,* 415 U.S. at 664–77, 94 S.Ct. at 1356–63; *see also Florida Dep't of Health v. Florida Nursing Home Ass'n,* 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1033–34, 67 L.Ed.2d 132 (1981) (per curiam).[13] What Rannels is left with is a claim for prospective injunctive relief, which will be considered below.

---

**11.** This holding is not undercut by the expanded scope of the ADA and the related statutes brought about by the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, 102 Stat. 28 (codified in scattered sections of 20, 29 & 42 U.S.C.). This statute was the result of the Court's decision in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), which held that federal assistance to one part of a college would not constitute aid to any other part of the college. While Congress did broaden the scope of the definition of "program or activity" to cover, *inter alia,* whole educational institutions where only part of one had received funds, it expressly kept the earlier definition of program for state governments as including only the department or agency which receives aid. S.Rep. No. 64, 100th Cong., 2d Sess. 4, *reprinted in* 1988 U.S.Code Cong. & Admin. News 1, 6. It also left untouched the beneficiary/recipient distinction.

**12.** Though § 1983 is not mentioned in Rannels' complaint, Hargrove suggests that Rannels may have intended to plead it. Memorandum of Law in Support of Defendant's Motion to Dismiss at 3. Rannels agrees. Plaintiff's Request to Deny Defendant's Motion to Dismiss at 1–2. Accordingly, I shall read Rannels' complaint as though he had amended it to plead § 1983 violations under the sources of law he mentioned.

**13.** As mentioned above, Hargrove's, and the Commonwealth's, immunity may be waived. Since the Commonwealth has explicitly reserved its Eleventh Amendment immunities, however, no suits forbidden by them may obtain. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (per curiam).

### 1. ADA

■ This requires no involved exegesis. Even if Rannels may avoid the procedural obstacles thrown up under the ADA by pursuing the substantive rights it creates under § 1983, he may not thus escape the limited ambit of the right. For a § 1983 suit for the violation of federal law to go forward, the underlying federal law must create private rights enforceable under § 1983. *Pennhurst I,* 451 U.S. at 18–27, 101 S.Ct. at 1539–45; *West Virginia University Hosps., Inc. v. Casey,* 885 F.2d 11, 18 (3d Cir.1989). In addition, the federal law must not reflect congressional intent to foreclose private enforcement outside the scope of the statute creating the right. *Middlesex City Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13–14, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981); *West Virginia University Hosps.,* 885 F.2d at 18. Unlike the statute in *Pennhurst I,* the ADA expressly conditions federal assistance on state compliance. The statutory provisions in question here thus move beyond mere "congressional preference." *Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). It is clear, from both the formal conditions Congress imposed upon those who would receive federal funds and the elaborate enforcement mechanism, including private causes of action, it devised to monitor them, that Congress intended ADA claims to be enforceable under § 1983. *See, e.g., Golden State Transit Corp. v. City of Los Angeles,* ── U.S. ──, 110 S.Ct. 444, 449–52, 107 L.Ed.2d 420 (1989) (NLRA does not preclude § 1983 enforcement); *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 575–76 (2d Cir.1989) (Title VII does not preclude § 1983 enforcement); *Byrne v. Board of Educ.,* 51 Empl. Prac. Dec. (CCH) ¶ 39,303, 1989 WL 120646 (E.D.Wis. June 26, 1989) (Rehabilitation Act does not preclude § 1983 enforcement).

Unfortunately for Rannels, though, he has not brought his claim within the scope of the right created by the ADA. As discussed above in section II.A.5., the pleadings do not place Hargrove among the class of recipients of federal funds. Consequently, there exists no ADA-created right, the violation of which would create a cause of action under § 1983. Rannels' ADA-based § 1983 claim is therefore dismissed.[14]

### 2. Equal Protection Clause

There remains only Rannels' claim under the Fourteenth Amendment's Equal Protection Clause. Before beginning the substantive analysis, I must consider briefly whether Rannels may bring such a claim. Just as the ADA can foreclose claims under § 1983, it can do so for claims under the Equal Protection Clause. In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), for example, the Court voided both § 1983 claims and claims under the Equal Protection Clause. 468 U.S. at 1012–13, 104 S.Ct. at 3468–69; *see also Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1366–69 (4th Cir.1989) (Age Discrimination in Employment Act forecloses § 1983 and Equal Protection Claims; collects cases). The burden of showing foreclosure, as for the § 1983 conflict above, is on the government actor. Since here, as there, Hargrove did not address this issue, and since I need not address it to resolve this claim, I shall assume, without deciding, that the equal protection argu-

---

14. Given this result, I need not address a thornier question—namely, whether the ADA forecloses a private judicial remedy for the abridgement of the rights it creates. The Court has held that a sufficiently elaborate system of enforcement mechanisms may evince a congressional intent to bar further remedies. *Sea Clammers,* 453 U.S. at 13–14, 101 S.Ct. 2622–23; *see also Smith v. Robinson,* 468 U.S. 992, 1009–13, 104 S.Ct. 3457, 3467–69, 82 L.Ed.2d 746 (1984); *West Virginia University Hosps.,* 885 F.2d at 18. The burden is heavy, however, and it rests on the state actor. *Wright,* 479 U.S. at 423, 107 S.Ct. at 770. Since Rannels did not raise this argument, and Hargrove consequently did not address it, it would be premature for me to face it here. Moreover, in light of the Court's recent grant of certiorari to a case that raises similar issues, I would be ill-advised to climb this tree in order that I might go out on a limb. *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653 (4th Cir.) (private cause of action under § 1983 for enforcement of 42 U.S.C. § 1396(a)(13)(A)), *cert. granted,* ── U.S. ──, 110 S.Ct. 49, 107 L.Ed.2d 18 (1989).

ment may proceed.[15] *See Popkins,* 611 F.Supp. at 812 (both ADA and equal protection claims prosecuted).

Because § 1983 is merely a vehicle for pursuing the rights created by other sources of law, it is necessary to determine whether Rannels' claim falls within the ambit of the Equal Protection Clause. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). The first question in equal protection analysis is which standard of review to employ; after all, the Equal Protection Clause does not require that the state treat all persons alike. *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). Hargrove argues, and Rannels agrees, that the lowest level of scrutiny applies here. The Court has consistently applied the so-called "rational relationship" test to age discrimination claims. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *see also Hatten v. Rains,* 854 F.2d 687, 691–92 (5th Cir.1988); *Price v. Cohen,* 715 F.2d 87, 92 (3d Cir.1983); *Rannels,* 718 F.Supp. at 13.[16] There is no reason why any more penetrating scrutiny should apply here. *Cf. City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 720–21, 102 L.Ed.2d 854 (1989) (strict scrutiny applies to racial classifications); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (intermediate scrutiny applied to sex-based classifications).

■ Under the rational relationship test, it is necessary only that there be some reasonably conceivable set of facts under which the decision in question bears a rational relationship to a legitimate state interest. *Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988); *Murgia,* 427 U.S. at 314, 96 S.Ct. at 2567; *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976); *Philadelphia Police and Fire Ass'n v. City of Philadelphia,* 874 F.2d 156, 163 (3d Cir.1989). As a result, the complainant bears a heavy burden; the courts will only countermand state action if "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [they] can only conclude that the ... actions were irrational." *Vance,* 440 U.S. at 97, 99 S.Ct. at 942; *see also Anderson v. City of Philadelphia,* 845 F.2d 1216, 1222–23 (3d Cir.1988). Indeed, the reasons relied upon by the court need not be those actually relied upon by the actors or proffered by them *post hoc;* as long as the court can construct plausible reasons in support of the state action, the action must, under this standard, be upheld. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983); *Western & Southern Life Ins. Co. v. State Board of Equalization,* 451 U.S. 648, 672, 101 S.Ct. 2070, 2085, 68 L.Ed.2d 514 (1981); *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). At all times, the plaintiff bears the burden of proving illegitimacy. *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940); *Philadelphia Police & Fire Ass'n,* 874 F.2d at 163.

■ This standard is intimidating, and (especially given the intractable problem

---

**15.** I also note that the ADA covers only those who receive federal financial assistance. While it is possible that Congress, by passing the ADA, intended to bar constitutionally-based age discrimination claims against private actors, it seems highly unlikely; the legislative history contains no such statement, but it is replete with statements about the ADA's *expansion* of the legal remedies for age discrimination. *See* section II.A.3. *supra.*

**16.** Although these cases dealt with discrimination against the elderly, they apply with equal force to discrimination against the young.

Since the old resemble much more the "discrete and insular minority" that warrants probing scrutiny than do the young, it follows that if the lowest level of scrutiny applies to the old, it applies, *a fortiori,* to the young as well. *United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Indeed, our Court of Appeals has applied the rational relationship test to claims made by the class of the young, though admittedly in a different context. *Sadler v. Sullivan,* 748 F.2d 820, 824 (3d Cir.1984) (availability of Commonwealth prompt trial rule).

posed by forcing the plaintiff to prove a negative) almost automatically deferential to state action. *See* 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law* § 15.4, at 59 (1986) ("Today the due process and equal protection guarantees are not significant restraints on the government's ability to act in matters of economics or social welfare.").[17] I agree with Judge Van Antwerpen that the Club 50 Plan does not violate the Equal Protection Clause, and thus that Hargrove did not violate the Constitution by allowing the Plan to go forward (or, for that matter, encouraging it, as Rannels has pled). Aiding the elderly is plainly a legitimate state interest. It would add too much to an already long opinion were I to list the federal and Commonwealth programs and statutes that provide such aid; I mention the Social Security system, Medicare, the Internal Revenue Code, and the National Institute on Aging as examples. The Court has held as much. *Mathews v. De-Castro*, 429 U.S. 181, 187–88, 97 S.Ct. 431, 435–36, 50 L.Ed.2d 389 (1976).[18]

There remains only the question of whether the encouragement or toleration of the Club 50 program bears a rational relationship to that interest. The answer again must be yes. The effect of the program is to give a modest sum to older bank customers. This is no different in its effect than a tax break, or an increase in Social Security payments, or another form of subsidy. For this program to be stricken, many other programs favoring the old (or, indeed, the young) would have to be eliminated as well. That would run flatly against a long string of precedents upholding programs that assist the elderly. *See, e.g., Mathews*, 429 U.S. at 187–89, 97 S.Ct. at 435–36; *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972)

(welfare system funneling money to aged no violation); *Dillinger v. Schweiker*, 762 F.2d 506 (6th Cir.1985) (Social Security; may give heightened benefits to those reaching age 62 before a given date); *Acevedo v. Nassau County*, 500 F.2d 1078, 1081–82 (2d Cir.1974) (low-income senior citizen housing without equivalent housing for families no violation). I see no violation of the Equal Protection Clause here, nor, on the face of the complaint, has Rannels adequately pled that a violation exists. This section of the complaint must therefore be dismissed.

There remain no viable parts of the complaint. Accordingly, this case is dismissed. As a result, Rannels' request for injunctive relief must also be denied.

### III. CONCLUSION

In short, Rannels' state law claims are barred by Hargrove's Eleventh Amendment immunity, as are the § 1983 claims for damages and for retroactive relief. Immunity does not prevent Rannels from filing an ADA claim; moreover, there exists a private cause of action under the ADA, and its compass includes discrimination against the young, as well as the old. However, Rannels has failed to meet the statutory requirements for suit, and Hargrove is not, at least under Rannels' pleadings, covered by the ADA. Finally, the § 1983 prospective injunctive claims fall. Even if Rannels can pursue a § 1983 claim along with an ADA claim, he has not properly established that Hargrove is covered by the ADA, and thus he cannot use § 1983 to vindicate an ADA-created right. The Equal Protection Clause argument loses because the extremely deferential rational basis analysis appropriate here yields adequate reasons for Hargrove's actions, some

---

17. In practice, it resembles closely Justice Holmes' standard: Justice Frankfurter quoted him as saying "that he would not strike down State action unless the action of the State made him 'puke.'" Letter from Justice Frankfurter to Justice Burton (Dec. 13, 1946) (quoted in A.S. Miller & J. Bowman, *Death by Installments* 91 (1988)).

18. Moreover, Rannels concedes as much; in paragraph 13 of his complaint, he states that "a state objective exists in providing benefits to those over legal threshold ages such as 62 or 65 ..." This would limit his complaint to overinclusiveness, which is not normally problematic. *New York Transit Auth. v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *see also* L. Tribe, *American Constitutional Law* § 16–4, at 1449–50 (2d ed. 1988).

supplied by Rannels himself in his complaint. This action must thus be dismissed.

Since Hargrove has not filed an answer, Rannels may, under Rule 15(a), apply for leave to amend. It is a tenet of our rules of procedure that amendments to complaints are to be allowed with the utmost liberality, particularly where, as here, the complaint has not formally been answered. Since a motion to dismiss does not constitute an answer, Rannels retains his right to amend. *See, e.g., Kelly v. Delaware River Joint Comm'n,* 187 F.2d 93, 94 (3d Cir. 1951);. 3 J. Moore, *Moore's Federal Procedure* ¶ 15.07[2] (2d ed. 1989). In light of Rannels' *pro se* status, I shall grant him thirty days within which he may file an amended complaint.[19] He should observe that, though amendment is to be allowed freely, it will not be fruitful unless it remedies the deficiencies of the original complaint. 3 J. Moore, *Moore's Federal Procedure* ¶ 15.10 (2d ed. 1989). Given the law of the case, this would likely be difficult. Rannels may, however, try.

An order follows.

## ORDER

AND NOW, upon consideration of the defendant's motion to dismiss, the plaintiff's response thereto, the plaintiff's motion for a preliminary injunction, and the defendant's response thereto. IT IS ORDERED that:

(1) The defendant's motion is GRANTED. The action is DISMISSED. The plaintiff has thirty days within which he may file an amended complaint.

(2) The plaintiff's motion is DENIED.

---

**19.** After that, Rannels will have to file a new complaint with a new docket number and filing fee.