**Marlene Thompson LONG, Vincent Long, and Christina Long, Plaintiffs,**

v.

**FULTON COUNTY SCHOOL DISTRICT, Defendant.**

**Civil Action No. 1:10–cv–3033–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 4, 2011.

Rory K. Starkey, The Starkey Law Firm, LLC, Atlanta, GA, for Plaintiffs.

Randall C. Farmer, Brock Clay Calhoun & Rogers, LLC, Marietta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on the motion of Defendant Fulton County School District ("FCSD") for judgment on the pleadings [29].

## I. Factual Background [1]

Plaintiffs are Marlene and Vincent Long (the "Longs") and their daughter, Christina Long. They complain that over the course of three and a half years, FCSD employees engaged in a pattern of pervasive and continuous discriminatory actions against Christina, who is a student in FCSD schools.

### A. Christina's Schooling in New York

Before the Longs moved to Georgia in 2005, they lived in New York. In June 2004, then-three-year-old Christina took an IQ test that identified her as "intellectually gifted." One year later, Christina completed kindergarten at the Pat–Kam School, a private school in New York.

In October 2005, the Longs were considering moving to Alpharetta, Georgia due to Mrs. Long's pending job transfer, and they wanted Christina to be enrolled at Manning Oaks Elementary, a school in FCSD's district. The Longs delivered a letter to Deanna Rogers, Manning Oaks's curriculum support teacher ("CST"), indicating that Christina had already completed kindergarten and was enrolled in the first grade at the Pat–Kam School. Ms. Rogers refused to accept Christina's prior test results or data from the Pat–Kam School in determining Christina's placement. She stated that Christina, who had just turned five years old,[2] was too young for the first grade and should instead be enrolled in kindergarten.

The Longs found this unacceptable. They decided to delay their move to Georgia and transferred Christina to a public school in New York in order to solidify her eligibility to enroll in the first grade upon moving to Georgia. In December 2005, the Longs withdrew Christina from her public school in New York and moved to Alpharetta.

### B. The Second Half of Christina's First–Grade Year (Manning Oaks Elementary School)

On January 9, 2006, Christina, who was then five years and three months old, was enrolled in the first grade at Manning Oaks, despite Ms. Rogers's opposition and objection. The Longs allege that although Ms. Rogers assured them that Christina

---

1. On a motion for judgment on the pleadings, the Court accepts all facts pleaded in the amended complaint as true and construes those facts in a light most favorable to the plaintiff. *See Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir.2008).

2. Christina's exact birth date is not alleged, but it appears from the other allegations in the complaint that she was born on or near October 1, 2001.

would not be assessed immediately, she was in fact assessed on her first day at Manning Oaks. On January 16, in a meeting with Elizabeth Maury, Christina's first grade teacher, the Longs learned that Christina had been placed in "on level" reading, despite assessments made in New York that showed she was reading at a second-grade level. The Longs asked to view Christina's assessment but were permitted to view only the cover sheet (the results) of the assessment. Mrs. Long asked again in February to see the actual reading assessment, and her request was again denied.

In mid-February 2006, the Longs learned that the Criterion–Referenced Competency Test ("CRCT") was going to be administered, and they asked Ms. Maury to provide information about what curriculum had been covered during the first half of the school year, prior to Christina's enrollment at Manning Oaks. When Ms. Maury did not provide the requested information, the Longs contacted Sharon Reinig, the principal of Manning Oaks, who provided the information on or about March 15.

On March 20, the Longs learned that a student's assessment results determined which of three math groups the student would be placed in. They contacted Ms. Maury to ask about the distinction between the three math groups and to request to see Christina's math assessment. They were informed that Christina scored 32/40 on her assessment and had been placed in math level 1.2. The Longs contend that they learned two years later that 1.2 was not a class placement level and that Christina's actual level was never disclosed.

Christina successfully completed the first grade. From the time she enrolled at Manning Oaks in January 2006 until the end of the school year, the Longs were not informed about the availability of a talent-ed and gifted ("TAG") program, and Christina was not tested for that program.

## C. Christina's Second–Grade Year

In August 2006, Christina began her second-grade year at Manning Oaks, where she was placed in Ms. Porter's class. In December 2006 or January 2007, the Longs met with Ms. Porter and were shown Christina's math assessment, on which she scored a 23%. They claim that the assessment was shown to them as an indicator of areas Christina needed to work on, but they later learned that the assessments were used in connection with determining students' placements for the current or upcoming school years. On January 31, 2007, the Longs asked Ms. Porter about Christina's reading and language-arts assessment and were informed that she scored 41/50, or on-level. Again, Manning Oaks did not test Christina for the TAG program during her second-grade year.

## D. Christina's Third–Grade Year

The Longs claim to have had two conversations with school officials prior to her matriculation into the third grade at the beginning of the 2007–08 school year. First, in May 2007 they requested that Christina be assigned a seasoned and mature third-grade teacher. Then, in July they called the school to advise that Christina would be starting school a day or two late. They informed school personnel that they would not be able to attend meet-the-teacher night, but they wanted to receive assurance that she had in fact been assigned a teacher. They claim that front office personnel assured them that Christina was assigned a teacher consistent with their request for experience. However, by the time Christina arrived at Manning Oaks on the third day of the school year, she had been placed on the

"no-show" list and not assigned a teacher. She spoke to Ms. Rogers, who told Christina that the Longs should have spoken to her.

Christina was eventually placed in Ashley Rolader's third-grade class. Ms. Rolader had two years' experience teaching, and the Longs contend that Ms. Rogers assigned Christina an inexperienced teacher in retaliation for the Longs' complaints. They contend that Ms. Rogers informed them in a sarcastic and mocking tone that although Christina had originally been assigned a more mature teacher, "because the Longs failed to check in with her and clear things, Christina now had a not so mature and not so experienced teacher." Ms. Rogers refused to identify or assign the more mature teacher to whom Christina was originally assigned.

In August 2007, the Longs arranged a parent-teacher conference with Ms. Rolader, during which they articulated their commitment to working with the teacher as a team and their desire to be proactively involved in Christina's education. In October, at another meeting with Ms. Rolader, Mrs. Long expressed concern about Christina's placement and stated that Christina was not being challenged by the vocabulary and spelling words. Ms. Rolader confirmed that Christina's placement was designated "support," which is the same classification given students who are at risk of not reaching or maintaining their grade level and who are sent out of the classroom for extra help. Christina, however, did not require extra help. Ms. Rolader agreed to give her more challenging vocabulary and spelling words and to place her in the on-level group at the beginning of the second quarter. Immediately following the October 2007 parent-teacher conference, Mrs. Long had a conversation with Ms. Porter, Christina's second-grade teacher, in which Ms. Porter stated that at the end of Christina's second-grade year she had recommended on-level placement for reading and math.

Sometime after October 2007, the Longs began making requests for the guidelines used for determining student placement. According to the complaint, the Longs made specific requests to Ms. Rogers, assistant superintendent of curriculum and instruction Dr. Patty Rooks, and all members of the Fulton County School Board, but nobody ever produced any guidelines. Finally, on January 14, 2008, in a meeting among the Longs, principal Reinig, Dr. Rooks, and area superintendent Randee Nagler, area superintendent Nagler admitted that no such placement guidelines existed.

Shortly thereafter, to justify Christina's placement, Ms. Rogers presented documents that intentionally excluded Christina's perfect language arts grades and that the Longs claim were doctored to include Christina's first-grade rather than second-grade CRCT scores. Ms. Rogers presented a document purporting to show that Christina scored 39/50, or below-level, on her second-grade reading and language arts assessment, even though Ms. Porter had told the Longs in January 2007 that Christina had scored 41/50, or on-level, on the same assessment. The Longs contend that the document Ms. Rogers presented was forged and/or altered. When Mrs. Long asked to see Christina's school work and writing samples, principal Reinig informed her that first-grade and second-grade work was destroyed and refused to turn over other original school work by Christina, although Mrs. Long did meet with Ms. Rolader and Ms. Rogers to review Christina's writing samples.

In May 2008, Ms. Rolader started sending home negative behavioral comments about Christina. Mrs. Long requested to observe Ms. Rolader's class, but principal Reinig denied the request, claiming that

such an observation would be disruptive. The Longs also allege that Ms. Rolader was eventually instructed not to respond to their correspondence without prior permission from principal Reinig or Ms. Rogers. The Longs met briefly with FCSD superintendent Dr. Cindy Loe on May 13, 2008, but they claim that "they were never provided with a formal hearing to address their issues and concerns."

After the end of the 2007–08 school year, the Longs wrote to superintendent Loe and requested that Christina be permitted to transfer to New Prospect Elementary School in order to obtain a fresh start rather than continue at Manning Oaks. The Longs also requested that Christina's siblings be granted a waiver to attend New Prospect, that transportation be provided, that Christina be placed in the TAG program, that Christina's third-grade report card be corrected, and that the school provide copies of Christina's third-grade work. Area superintendent Nagler, responding on behalf of Dr. Loe, denied each of the Longs' requests. With respect to the request that Christina be considered for the TAG program, Nagler stated that she would provide information and guidelines regarding selection for the TAG program once the "threshold determination" was made as to what school Christina would attend for the upcoming school year. Ultimately, Christina was not permitted to transfer to New Prospect, and the Longs claim that Nagler wrote a letter to the principal at New Prospect with negative information about the Longs and informed the principal of her intent to not let Christina transfer.

### E. Christina's Fourth–Grade Year (Lake Windward Elementary School)

After speaking with the principal and assistant principal of Lake Windward Elementary School, another Fulton County public school, the Longs decided to move so that Christina could attend the fourth grade at Lake Windward during the 2008–09 school year.

Throughout the school year, Mrs. Long either received no response or delayed responses to inquiries and e-mails that she sent to school officials. During Christina's first two months at Lake Windward, Mrs. Long sent e-mails to Christina's homeroom teacher, Patricia Clements, and to her social studies and reading teacher, Julie May, that went unanswered. These emails included questions about missed homework assignments, grading and weighting of grades, how Christina was acclimating, approving books at appropriate reading levels, the results of Christina's assessments, and the school's failure to respond to various issues.

In August and September 2008, Mrs. Long e-mailed Martha Messina, Lake Windward's principal, and Ms. Clements concerning incidents of Christina being bullied by a male student who called her "lesbian," "gay," and "stupid." Mrs. Long received no response to her messages. In November 2008, Christina informed Ms. Clements that the same student was now calling Christina gay and stupid repeatedly. Ms. Clements responded that she did not feel that lesbian was a bad word and that gay only meant happy and joyful, and she told Christina to work it out with the other student. Mrs. Long sent another e-mail to principal Messina, but again she received no response. The Longs contend that the indifference showed by school officials to the bullying Christina experienced was intended to "punish Mrs. Long for attempting to communicate with school officials regarding their incorrect placement of Christina."

The Longs also complain that Lake Windward officials denied their requests for meetings. Mrs. Long requested a conference with Ms. May, who initially agreed

to the meeting but later stated that she could not meet and that the Longs should instead schedule a meeting time with principal Messina. Principal Messina twice denied Mrs. Long's request to speak with Lake Windward's TAG teacher, Ms. Mullen, as did the director of Fulton County Schools' TAG program, Amy Barger, who referred Mrs. Long back to principal Messina.

On September 9, 2008, the Longs' then-counsel wrote a letter [27–1] to area superintendent Nagler listing a number of complaints concerning, among other things, the race and gender discrimination they thought was occurring, the lack of objective placement guidelines, and FCSD's failure to provide information to the Longs about the TAG program and test Christina for it. The letter also demanded a hearing.

On October 27, 2008, FCSD's counsel responded [27–2] by denying the allegations in the letter and stating that Christina Long had been screened for the TAG program. Yet the Longs never received any communication from the school indicating that Christina would be or had been screened for the TAG program, and they contend that she was never actually screened. With respect to the Longs' request for a hearing, the letter explained that the type of hearing the Longs sought as well as the legal basis for such a request was unclear.

Christina received poor citizenship comments on her first-quarter report card during the 2008–09 school year, although the school had never mentioned such issues to the Longs. Mrs. Long e-mailed principal Messina and asked her to remove the comments because of the school's failure to communicate with the Longs despite their obvious availability and attempted dialogue with school officials. Principal Messina refused, stating "this email is the kind of stuff that caused this problem in the first place."

At the end of the 2008–09 school year, Fulton County Schools did not believe that Christina was ready to advance to the fifth grade. Mrs. Long wrote to principal Messina on May 12, 2009, complaining about what the Longs perceived to be racial discrimination against Christina. On June 8, principal Messina responded and denied all allegations of racial discrimination. She acknowledged that assessment and placement decisions concerning Christina were based, in part, on her "young age." Principal Messina's letter invited the Longs to come to the school to review the educational records that they had asked about in their letter. When Mrs. Long did so on a day or two later, she discovered a document entitled "Fulton County Schools Student Enrollment Form," dated January 10, 2006, which had the word "underage" written at the top of it. This is the date on which the Longs contend they discovered the age discrimination against Christina.

### F. After Fourth Grade

In August 2009, due to what the Longs perceived as age and sex discrimination against Christina, the Longs were forced to remove Christina from Fulton County public schools. They enrolled her in a five-week summer reading class to improve her reading level, which they claim was adversely impacted by the discrimination she experienced by FCSD. Christina attended fifth grade at a private school, and she has since been enrolled at Webb Bridge Middle School, a FCSD school. However, she is not, nor has she ever been, enrolled in the TAG program.

### II. Procedural Background

On November 5, 2009, the Longs filed a complaint of age discrimination with the U.S. Department of Education, Office of

Civil Rights ("OCR"). The OCR has not made any findings on that complaint.

On September 22, 2010, the Longs filed this action against Fulton County Board of Education and/or FCSD, for age and sex discrimination. On December 10, the Longs amended their complaint [9] to remove Fulton County Board of Education as a defendant, leaving only FCSD. Most recently, on April 15, 2011, the Longs filed a second amended complaint [27], under which they are currently proceeding. They assert claims for age discrimination in violation of the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–07; sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(A); and violation of their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a claim that is brought pursuant to 42 U.S.C. § 1983. The Longs seek compensatory and punitive damages, an injunction, and attorneys' fees. FCSD has moved for judgment on the pleadings as to each of the Longs' claims.

## III. Discussion

### A. Legal Standard

■ A party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). Judgment pursuant to Rule 12(c) is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir.2002). "A motion for judg-

ment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F.Supp.2d 1283, 1284 (N.D.Ga.2008).

■ On a motion for judgment on the pleadings, the court accepts factual allegations in the complaint as true and construes all reasonable factual inferences in the plaintiff's favor. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir.2008). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127 (5th Cir.1955).[3] To survive a motion for judgment on the pleadings, a complaint must convey factual allegations that amount to "more than labels and conclusions" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### B. Analysis

#### 1. The Longs' Title IX Claim Is Not Time–Barred.

FCSD correctly points out that the two-year statute of limitations in OCGA § 9–3–33 for injuries to the person governs Longs' Title IX claim. *M.H.D. v. Westminster Schools*, 172 F.3d 797, 803 (11th Cir.1999). The Longs' complaint was filed on September 22, 2010, and all of FCSD's alleged acts and omissions occurred on or after September 22, 2008.[4] Thus, the

---

**3.** The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**4.** The Longs' Title IX claim is based on allegations that a boy in Christina's class called her

a "lesbian," "gay" and "stupid" and that FCSD made no attempt to stop these actions after the Longs reported them. These name-calling incidents are alleged to have taken place on or about September 22 and November 7 and 8, 2008.

Longs' Title IX claim is timely, and to the extent FCSD's motion seeks judgment on the pleadings as to that claim, that motion will be denied.

### 2. The Longs' Claim for Reverse Age Discrimination Can Proceed Insofar as It Seeks Injunctive Relief.

The Longs bring a claim under the Age Discrimination Act ("ADA" or the "Act") alleging that FCSD discriminated against Christina based on her young age. FCSD contends that it is entitled to judgment on this claim for a number of reasons. First, FCSD argues that the ADA does not permit private rights of action for claims alleging discrimination against young individuals. Second, even if so-called "reverse discrimination" claims are cognizable, FCSD asserts that a prevailing plaintiff is entitled to recover only injunctive relief, not monetary damages, and it argues that the Longs lack standing to obtain injunctive relief in this case. Third, FCSD contends that the Longs failed to exhaust their administrative remedies before bringing their ADA claim.

### a. The Longs Have Exhausted Their Administrative Remedies With Respect to Their ADA claim.

If, as FCSD argues, the Longs failed to exhaust their administrative remedies with respect to their age-discrimination claim, then this Court lacks subject-matter jurisdiction over that claim.[5] Accordingly, the Court will begin its analysis with this jurisdictional issue.

The ADA requires a would-be plaintiff to file an administrative complaint with the OCR prior to filing an action in federal court. 42 U.S.C. § 6104(f). The OCR complaint must be filed "within 180 days from the date the complainant first had knowledge of the alleged discrimination." 34 C.F.R. § 110.31(a). In this case, there is no dispute that the Longs filed their OCR complaint on November 5, 2009. The issue is whether that complaint was timely.

FCSD argues that the Longs had knowledge of the alleged age discrimination as early as October 2005, when Ms. Rogers told them that Christina was too young for the first grade. If that is the case, then the Longs' 2009 OCR complaint is untimely. In response, the Longs contend that Ms. Rogers's 2005 comment was subsequently voided when she allowed Christina to enroll in the first grade. They claim that it was not until Mrs. Long reviewed Christina's educational records on June 9 or 10, 2009, that they first "had knowledge that the numerous bad acts taken against their daughter occurred as a result of age discrimination as opposed to ... race discrimination...." They filed their OCR complaint approximately 150 days later.

■ On a motion for judgment on the pleadings, "[a]ll facts alleged in the com-

---

**5.** Although the Eleventh Circuit has not addressed whether exhaustion is a jurisdictional requirement, other courts that have addressed the question—including one district court in this circuit—have almost unanimously concluded that it is. *See Parker v. Bd. of Supervisors Univ. of Louisiana–Lafayette,* 270 Fed. Appx. 314, 317 (5th Cir.2008); *Simmons v. Middle Tenn. State Univ.,* No. 95–6111, 1997 WL 400105, at *4 (6th Cir. July 11, 1997); *Smith v. Armstrong Atl., State Univ.,* No. CV410–059, 2010 WL 6546830, at *2 (S.D.Ga. Dec. 13, 2010); *McVicker v. Hartfield,* No.

2:08–cv–1110, 2009 WL 2431257, at *10 (S.D.Ohio Aug. 6, 2009); *Curto v. Smith,* 248 F.Supp.2d 132, 145 (N.D.N.Y.2003), *aff'd sub nom. Curto v. Edmundson,* 392 F.3d 502 (2d Cir.2004); *Parker v. Wakelin,* 887 F.Supp. 14, 15 (D.Me.1995); *Popkins v. Zagel,* 611 F.Supp. 809, 812 (C.D.Ill.1985). *But see Strujan v. Teachers Coll. of Columbia Univ.,* No. 08 Civ. 9589(WHP)(HBP), 2010 WL 3466251, at *2 (S.D.N.Y. Sept. 3, 2010) ("[F]iling a timely charge of discrimination ... is not a jurisdictional prerequisite to suit in federal court....").

plaint must be accepted as true and viewed in the light most favorable to the nonmoving party," in this case, the Longs. *Douglas Asphalt*, 541 F.3d at 1273. So viewed, the facts show that until June 2009 the Longs believed that FCSD was discriminating against Christina based on her race, not her age. The Longs wrote a letter to area superintendent Nagler in September 2008 complaining about perceived race- and gender-based discrimination, and in May 2009 Mrs. Long wrote to principal Messina and again complained about perceived racial discrimination. Prior to the time that Mrs. Long reviewed Christina's educational records, the only indicator of possible age-based discrimination was Ms. Rogers's initial refusal to enroll Christina in the first grade because she was too young. However, because Ms. Rogers eventually did enroll Christina in the first grade, the Court finds that her 2005 statement did not impart knowledge to the Longs of any age-based discrimination. *Cf. D.A. v. Hous. Indep. Sch. Dist.*, 716 F.Supp.2d 603, 620–21 (S.D.Tex.2009) (teacher's statement that a student would probably not be tested for special education because of his young age was sufficient to impart knowledge of age-based discrimination where the student was never thereafter tested for special education).

The Court finds that the Longs filed their OCR complaint within 180 days of learning of the alleged age discrimination and concludes that the Longs have exhausted their administrative remedies under the ADA.

### b. Reverse–Discrimination Claims Are Cognizable Under the Age Discrimination Act of 1975.

Having concluded that the Court has jurisdiction to entertain the Longs' age-discrimination claim, the Court will next address FCSD's argument that the ADA does not permit claims of reverse discrimination.

Under the ADA, "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.[6] There is limited but conflicting case law addressing whether the Act permits private claims for reverse age discrimination. *Compare D.A. v. Hous. Indep. Sch. Dist.*, 629 F.3d at 455 (affirming the district court's grant of summary judgment on a student's reverse discrimination claim for failure to exhaust administrative remedies, but noting that "[s]trange as it may seem, [the student] could file a claim under the [ADA]"), *and Rannels v. Hargrove*, 731 F.Supp. 1214, 1220 (E.D.Pa.1990) (holding that claims alleging reverse discrimination are cognizable under the ADA), with *Parker v. Wakelin*, 887 F.Supp. 14, 15 (D.Me. 1995) (disagreeing with *Rannels* and holding that "[t]here is simply no basis to conclude that [the ADA], part of the 'Older Americans Amendments of 1975' and enacted to address the unique problems faced by older workers, can be used to protect younger workers as well."). No court in this circuit has addressed the issue.

■ The Court's analysis of the foregoing cases leads it to the same conclusion reached by the courts in *DA.* and *Rannels*, i.e., that claims of discrimination by younger individuals in favor of older ones are cognizable under the ADA.

In *Rannels*, the court began by examining the statutory language of 42 U.S.C.

---

6. There is no dispute that Defendant FCSD receives federal financial assistance from the United States Department of Education.

§ 6102—which provides in unqualified terms that "no person in the United States shall, on the basis of age, be" discriminated against with respect to programs or activities receiving federal funding. 731 F.Supp. at 1220. The court further noted that "[h]ad Congress wanted to protect only the elderly, it could have done so with only minor changes in wording." *Id.* Turning next to the legislative history, the court observed that the report accompanying the bill "states that the statute excludes programs for which the law describes intended beneficiaries or target groups in age-related terms without reference to specific chronological age, as in the use of such terms as 'older Americans,' or 'elderly,' *or 'children.'*" *Id.* (internal punctuation omitted, emphasis added) (quoting H.R.Rep. No. 670, at 58 (1975) (Conf. Rep.), *reprinted in* 1975 U.S.C.C.A.N. 1252, 1325).

The *Rannels* court also relied on the fact that both the executive branch as well as many who spoke in Congress in support of the ADA read it broadly. Caspar Weinberger, then-secretary of health, education and welfare, wrote a letter to the chairman of the committee on labor and public welfare in which he "included decisions by school districts to exclude three-year-olds from kindergarten classes or eleven-year-olds from high school classes as potentially within the compass of the ADA." *Id.* (citing Letter from Caspar W. Weinberger to Harrison A. Williams, Jr. (June 18, 1975), *reprinted in* 1975 U.S.C.C.A.N. 1252). Likewise, then-representative John Brademas, one of the sponsors of the Older Americans Amendments which enacted the ADA, stated that the committee's intent was that the ADA "apply to age discrimination at all age levels, from the youngest to the oldest." *Id.* (quoting 121 Cong. Rec. 9, 212 (daily ed. Apr. 8, 1975) (statement of Rep. John Brademas) and citing 121 Cong. Rec. 37, 299 (daily ed. Nov. 19, 1975) (statement of Rep. Albert Quie)).

As mentioned above, the analysis in *Rannels* was rejected by the district court in *Parker,* which stated that it could find "no basis to conclude" that claims alleging reverse discrimination are cognizable under a statutory scheme that was enacted as "part of the 'Older Americans Amendments of 1975'" in order "to address the unique problems faced by older workers." 887 F.Supp. at 15. However, the *Parker* court's discussion was very brief and did not address the fact that the *Rannels* court had considered—and ultimately rejected—the very same argument:

> The ADA was enacted as part of an omnibus bill, the Older Americans Amendments of 1975, intended primarily to benefit the elderly. Therefore, one could view the ADA as part of a market basket of aids to the elderly, and conclude that the legislative purpose was to prevent discrimination against them.
>
> This information, however, does not control the ambit of the statute. The speakers above did not state that the scope of the ADA was *limited* to discrimination against the elderly; rather, they merely emphasized that it would cover such discrimination. An intent to assist the elderly is not inconsistent with an intent to assist others. The ADA's aegis is also not determinative, as omnibus bills inevitably carry many different passengers. Though Congress, or at least some members, may have been impelled to act by perceived discrimination against the elderly, it never evinced a desire to limit the ADA to remedying that problem.

*Rannels,* 731 F.Supp. at 1221 (internal citation and footnote omitted).

The thorough and well reasoned analysis of the *Rannels* opinion persuades this Court that claims for reverse discrimination are cognizable under the Age Discrimination Act of 1975.

### c. The Longs May Seek Injunctive Relief, but Not Monetary Damages, on Their ADA Claim.

■ "Whether a litigant has a cause of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 595, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (internal punctuation omitted). Therefore, the Court's conclusion that the Longs are permitted to bring a private claim alleging reverse discrimination under the ADA does not resolve the question of what relief, if any, the Longs may obtain on that claim. FCSD makes two arguments in this regard: first, that the ADA does not permit private actions for monetary damages, and second, that the Longs lack standing to seek injunctive relief.

### i. The ADA Does Not Permit Private Actions for Monetary Damages.

FCSD's first argument is that private litigants under the ADA may obtain only injunctive relief, not monetary damages. The Court agrees.

The section of the Act concerning enforcement—42 U.S.C. § 6104(e)—specifically mentions the availability of injunctive relief and attorneys' fees, but does not mention monetary damages. *See* 42 U.S.C. § 6104(e)(1) ("When any interested person brings an action in any United States district court ... to enjoin a violation of this Act by any program or activity receiving Federal financial assistance, . . . ."). FCSD argues that the statutory language is sufficient to demonstrate that Congress did not intend to create a remedy of monetary damages. Although the fact that a statute makes no mention of a particular remedy is not, standing alone, determinative of whether such a remedy is in fact available, the U.S. Supreme Court has instructed that "where a statute expressly provides a particular remedy or

remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

The Longs contend that the ADA's notice provision, which requires a would-be plaintiff to provide notice of, *inter alia,* "the relief to be requested" in a lawsuit, indicates that such "relief" must not be limited to injunctions. 42 U.S.C. § 6104(e)(2). However, injunctive relief can take many forms, and the fact that Congress requires litigants to provide notice of the type of relief they will seek does not compel the conclusion that they are entitled to seek whatever relief they want. And the Longs point to nothing else in the Act purporting to demonstrate a Congressional intent to create a private right of action for monetary damages. Indeed, most of the authorities cited by both parties address not the question of what remedy a private litigant may seek under the ADA, but whether a private litigant may bring an ADA claim in the first place, which the Court has already resolved.

■ The Court concludes that although the ADA does permit a private lawsuit for injunctive relief, including one alleging reverse age discrimination, it does not authorize an award of monetary damages in such a suit. This is common among statutes enacted pursuant to Congress's Spending Clause powers, such as the ADA. *See Franklin v. Gwinnett Cnty. Pub. Schs.,* 503 U.S. 60, 65, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("[U]nder [Spending Clause] statutes, relief may frequently be limited to that which is equitable in nature, with the recipient of federal funds thus retaining the option of terminating such receipt in order to rid itself of an injunction."). It is true that the U.S. Supreme Court has interpreted other Spending Clause statutes, such as Title VI and Title IX, as allowing claims for monetary dam-

ages. *See id.* at 70–71, 76, 112 S.Ct. 1028. However, both of those statutes are enforceable through *implied,* rather than *express,* rights of action, and neither statute, therefore, makes any mention of specific remedies available to private litigants. By contrast, the ADA expressly creates a private right of action but mentions only injunctive relief. Therefore, the traditional presumption that all appropriate remedies are available must give way to Congress's express indication that only injunctive relief is available to private ADA litigants. *See id.* at 66, 112 S.Ct. 1028 ("[W]e presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.").

Finally, a majority of courts that have addressed the issue have likewise concluded that monetary damages are not available under the ADA. *See Marin v. Eidgahy,* No. 10–cv–1906–MMA–RBB, 2011 WL 2446384, at *8 (S.D.Cal. June 17, 2011) ("Because Plaintiff only seeks monetary damages from Defendants, he cannot maintain an age discrimination claim under [the ADA]."); *McVicker v. Hartfield,* No. 2:08–cv–1110, 2009 WL 2431257, at *10 (S.D.Ohio Aug. 6, 2009) ("[T]he [ADA] does not authorize the recovery of monetary damages; rather, the private cause of action under the [ADA] is limited to injunctive relief and the recovery of attorney's fees."); *Rasmussen v. Cal. DMV,* No. CV 08–1604–FMC (PLA), 2008 WL 5274611, at *4 n. 3 (C.D.Cal. Dec. 17, 2008) ("Although the [ADA] authorizes a private right of action 'to enjoin a violation of this Act by any program or activity receiving Federal financial assistance,' the Act does not authorize the recovery of monetary damages.") (internal citations to the record omitted); *Montalvo–Padilla v. Univ. of Puerto Rico,* 498 F.Supp.2d 464, 465 n. 3 (D.P.R.2007) ("[T]he private cause of action created by the ADA is limited to injunctive relief and the recovery of attorney's fees.... Accordingly, ... even if

Plaintiffs had a viable ADA claim, they could not recover monetary damages thereunder."); *Wieker v. Mesa Cnty. Valley Sch. Dist. # 51,* No. 05–CV–806–WYD–CBS, 2007 WL 595629, at *10 (D.Colo. Feb. 21, 2007) ("I find no evidence in the [ADA] of Congressional intent to create a private remedy for damages."); *Tyrrell v. City of Scranton,* 134 F.Supp.2d 373, 383 (M.D.Pa.2001) ("[T]he ADA cannot support an action for damages, and Tyrrell's claim for damages under that statute must be dismissed.").

The foregoing analysis leads this Court to conclude that monetary damages are not available under the Age Discrimination Act of 1975. Therefore, to the extent the Longs seek damages for their ADA claim, FCSD is entitled to judgment on the pleadings. Because the Longs seek injunctive relief as well, the Court will next address whether they have standing do so.

### ii. The Longs Have Standing to Seek Injunctive Relief on Their ADA Claim.

Because Christina is no longer enrolled in Lake Windward or Manning Oaks and is therefore no longer subject to the teachers and principals alleged in the Longs' complaint, FCSD claims that the Longs lack standing to seek injunctive relief. The Court disagrees.

■ Christina is still enrolled in the Fulton County School District, and the Longs allege that some of the conduct giving rise to their claims was committed by individuals who work for the district as a whole, rather than the individual schools, such as the superintendent, area superintendent, and members of the school board. Furthermore, the Longs allege that "Christina has still been precluded from receiving information about the Talented and Gifted program." Accordingly, the Court concludes that the Longs have alleged "a real and immediate—as opposed

**1288**

to a merely conjectural or hypothetical—threat of future injury." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir.2001) (emphasis omitted). They therefore have standing to seek injunctive relief on their ADA claim.

### 3. FCSD Is Entitled to Judgment on the Pleadings on the Longs' Due Process Claim.

Finally, the Longs bring a claim pursuant to 42 U.S.C. § 1983, contending that FCSD has violated their right to due process under the Fourteenth Amendment to the United States Constitution.

 "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff was deprived of a federal right by a person acting under color of state law." *Sprauer v. Town of Jupiter,* 331 Fed.Appx. 650, 652 (11th Cir.2009) (internal punctuation omitted). "A local government body, such as the [s]chool [district] in this case, is liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury....'" *Cuesta v. Sch. Bd. of Miami–Dade Cnty.,* 285 F.3d 962, 966 (11th Cir.2002) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The Court interprets the second amended complaint as setting forth claims for violations of the Longs' substantive and procedural due process rights, and it will address each claim in turn. For the reasons that follow, FCSD is entitled to judg-ment on the Longs' § 1983 claim in its entirety.

#### a. FCSD Is Entitled to Judgment on the Longs' Substantive Due Process Claim.

 The Longs assert that their due process rights were violated by FCSD's refusal to provide them with information about the school district's TAG program and to test or consider Christina for that program. The Court interprets this as a claim under the substantive component of the Due Process Clause, "which bars certain arbitrary government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 337, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring in the judgments). "Substantive due process protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Sprauer,* 331 Fed.Appx. at 652 (internal punctuation omitted). "The fundamental rights protected under the due process clause are rooted in the United States Constitution, and thus substantive due process cannot be used to vindicate rights that are creatures of state law." *Id.* (citing *Greenbriar Vill., L.L.C. v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir.2003)); *see also Collins,* 503 U.S. at 119, 112 S.Ct. 1061 ("Although the [§ 1983] statute provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law.").

 FCSD is entitled to judgment on the pleadings as to the Longs' substantive due process claim because the Longs have failed to identify any fundamental right that FCSD violated. Citing only Georgia state law, the Longs contend that they "have a constitutionally protected property interest in receiving an adequate and free

public education."[7] However, "[t]he right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process." *C.B. v. Driscoll,* 82 F.3d 383, 387 (11th Cir.1996) (citing *Plyler v. Doe,* 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)); *see also San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (holding that education is not protected under the Fourteenth Amendment as a fundamental right). Because the asserted right to an adequate and free public education is protected by the Georgia State Constitution but not the U.S. Constitution, the Longs' substantive due process claim fails.

### b. FCSD Is Entitled to Judgment on the Longs' Procedural Due Process Claim.

In addition to claiming that FCSD violated their due process rights by failing to provide them with information about the TAG program, the Longs assert that their due process rights were violated when FCSD failed to provide them with a formal hearing under O.C.G.A. § 20–2–1160. The Court interprets this as a procedural due process claim.

■ "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003). Once again, the Longs have failed to allege a deprivation of a constitutionally protected liberty or property interest.

As an initial matter, it is not clear that any constitutionally protected liberty or property interest is at stake. It is well settled that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property" and that the range of interests so protected "is not infinite." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The basis for the Longs' procedural due process claim is the alleged denial of their request for a hearing under O.C.G.A. § 20–2–1160(a). However, the Eleventh Circuit has "emphasize[d] that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution," *Harris v. Birmingham Bd. of Educ.,* 817 F.2d 1525, 1528 (11th Cir. 1987), and the Longs have pointed to no authority supporting the proposition that denial of a hearing under O.C.G.A. § 20–2–1160(a) equates to a due process violation under the U.S. Constitution. Therefore, it is not certain that the Longs' allegations implicate a constitutionally protected interest sufficient to support a procedural due process claim.

■ Even assuming that the Longs' allegations implicate a constitutionally protected interest, their procedural due process claim cannot succeed because the Longs have failed to allege deprivation of that interest with constitutionally inadequate process. On September 9, 2008, the Longs' then-counsel wrote a letter to FCSD's counsel that, among other things, demanded a "formal grievance and hearing."[8] FCSD's counsel responded that it

---

7. *See* Ga. Const. art. VIII, § 1, ¶ 1; *Crim v. McWhorter,* 242 Ga. 863, 867, 252 S.E.2d 421, 424 (1979) ("[T]he right to a free education is guaranteed by the Constitution of the State of Georgia.").

8. Although the Longs purported to attach this letter as Exhibit 1 to their second amended complaint [27–1], they in fact attached only the odd-numbered pages of that letter, resulting in the Court only having the benefit of the first one-and-a-half sentences of the Longs' hearing request.

was "unclear what type of hearing [the Longs were] seeking or the legal basis for such a request." The Longs characterize this response as "an absolute denial of [their] request for a hearing," but the Court does not view it as such. Rather, the Court finds this to be an unambiguous request for more information concerning "the type of hearing" the Longs desired as well as "the legal basis for [their] request." From the facts alleged, it appears that the Longs never followed up with either FCSD or its counsel concerning their request, but instead filed this action complaining that their request was denied. Where a plaintiff fails to take advantage of remedies available under state law, he is not thereafter entitled to rely on that failure to claim that he was deprived of procedural due process. *McKinney v. Pate*, 20 F.3d 1550, 1565 (11th Cir.1994) ("The fact that McKinney failed to avail himself of the full procedures provided by state law ... does not constitute a sign of their inadequacy.") (internal punctuation omitted).

Because the Longs have not alleged facts sufficient to support a claim for a violation of their substantive or procedural due process rights, the Court will grant FCSD's motion for judgment on the pleadings as to this claim.

### 4. FCSD Is Entitled to Judgment on the Pleadings on the Longs' Claim for Punitive Damages.

Finally, FCSD seeks judgment on the pleadings on the Longs' claim for punitive damages. Because the Longs failed to respond to this request, it is deemed unopposed pursuant to Local Rule 7.5. Furthermore, it is well settled that punitive damages are not available against a government entity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Healy v.*

*Town of Pembroke Park*, 831 F.2d 989, 991 (11th Cir.1987) ("punitive damages are not available under § 1983 against the Town"); *Rollison v. Gwinnett Cnty.*, 865 F.Supp. 1564, 1570 (N.D.Ga.1994) ("Municipalities cannot be liable for punitive damages under 42 U.S.C. § 1983."). FCSD, a public school district, undoubtedly falls within the scope of this rule. *See Kubany v. Sch. Bd. of Pinellas Cnty.*, 839 F.Supp. 1544, 1551 (M.D.Fla.1993) (limiting the plaintiff's recovery against a school board to compensatory damages, noting that "punitive damages are not available under § 1983 from a governmental entity"). Accordingly, the Court will grant FCSD's motion for judgment on the pleadings as to the Longs' claim for punitive damages.

### IV. Conclusion

For the foregoing reasons, Defendant Fulton County School District's motion for judgment on the pleadings [29] is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to the Longs' claims for (1) monetary damages under the Age Discrimination Act, (2) violation of their due process rights under § 1983, and (3) punitive damages. The motion is denied with respect to the Longs' Title IX claim and their claim for injunctive relief and attorneys' fees under the ADA.